IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN M. ERENRICH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 2:23-1857 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| THE CINCINNATI INSURANCE ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANUDM ORDER

### I. MEMORANDUM

**A. Motion to Compel Appraisal**

Presently before the Court is Defendant Cincinnati Insurance Company's ("Cincinnati") Motion to Compel Appraisal and materials in support (Docs. 35, 51). Plaintiff Weatherizer, Inc. t/d/b/a Patete Kitchen and Bath Design Center ("Weatherizer") opposes Cincinnati's motion. (Docs. 39-41, 49-50). After consideration of the parties' positions and the prevailing legal standards, and for the following reasons, Cincinnati's Motion to Compel Appraisal will be granted.

On August 1, 2024, following fact discovery and an unsuccessful attempt at mediation, Cincinnati invoked an "appraisal" provision contained in the Policy by sending a written demand to Weatherizer's counsel to proceed to appraisal on the amount of business income and extended business income loss. *See* Motion to Compel (Doc. 35) Ex. A. The appraisal provision provides a method for resolving disputes over the amount of a loss, which may be invoked by either the policyholder or the insurer. Specifically, the appraisal provision of the Policy states:

**SECTION C. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

1. <u>**Appraisal**</u>

    If we and you disagree on the amount of "Business Income" "loss", either may make written demand for appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

    The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of "Business Income" "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim.

*See* Docs. 41-1, 52-2.

In addition to sending its written demand to Weatherizer, Cincinnati, pursuant to the Appraisal provision, selected an appraiser (Steven J. Miels, CPA). <u>Id.</u> Weatherizer, however, has refused to participate in the appraisal process outlined in the Policy. Instead, Weatherizer disputes the propriety of an appraisal in this case, leading to the current request for court intervention. Specifically, Cincinnati requests that the Court order Weatherizer to comply with the appraisal request, appoint its own competent and impartial appraiser, and proceed with an appraisal of the amount of loss under the Policy's loss of business income and extended business income coverages. *See* Motion to Compel (Doc. 35) ¶ 19. In opposition, Weatherizer insists that Cincinnati's motion is procedurally defective, untimely and prejudicial and that the meaning of business income under the Policy is beyond the scope of appraisal. *See* Doc. 39-40.

"The well-established public policy of Pennsylvania encourages the settlement of disputes about the amount of loss by appraisal." Shearer v. State Farm Fire & Cas. Co., No. CV 1609469FLW LHG, 2017 WL 3611743, at *2 (D.N.J. Aug. 22, 2017) (citing Ice City v. Ins. Co. of N. Am., 314 A.2d 236, 240 (Pa. 1974)).  A condition precedent to appraisal is that the insurer admits coverage and disputes only the dollar value of the loss.  See id. (citing Ice City, 314 A.2d at 240).  A coverage dispute, "improper for appraisal, occurs when an insurance company claims an exclusion of a loss under the terms of the insurance policy." Id. (citing Banks v. Allstate, 1992 WL 102885 (E.D.Pa.1992).  A mere disagreement over the extent of damage or whether a covered peril is the cause of certain damage, however, "is a dispute regarding the amount of loss and is proper for appraisal."  See id. (citing cases).  The public policy favoring appraisal holds true even after the commencement of insurance coverage litigation.  See, e.g., CLP Assocs., LLC v. Seneca Ins. Co., No. CV 20-1409, 2021 WL 3852069 (W.D. Pa. Aug. 27, 2021).

Here, after careful review, the Court agrees that all conditions precedent have been met and that appraisal is the appropriate next step.  Cincinnati's appraisal demand complies with the above-quoted procedure set forth in the Policy in both form and substance, and Cincinnati admits that it does not contest coverage.  Although Weatherizer protests the "lateness" of the appraisal demand, the Court finds it timely under the facts and circumstances of this particular case.  Namely, Cincinnati demanded appraisal only eight days after the parties' court-mandated mediation session, a session during which the parties settled part of the litigation.  Prior to this settlement, the case involved both additional claims and parties.  Post-settlement, only Weatherizer's loss of business income and related bad faith claims remain.  The appraisal demand also came within a reasonable time after discovery that included analyses of the loss of business claim and deposition testimony regarding the same.

This also is not a case where Cincinnati has refused to pay Weatherizer for its alleged business income loss. Rather, Cincinnati has issued payments exceeding the amount it subsequently determined to be the actual loss - the amount that currently is in dispute. Given these circumstances, the Court finds that Cincinnati did not waive its appraisal rights and that the timing of the appraisal demand was reasonable. The Court further finds that Plaintiff will not be prejudiced by the timing of the appraisal demand or by engaging in the appraisal process. *See* CLP Assocs., LLC, 2021 WL 3852069, at *5 (finding that "neither the timing of Defendant's appraisal demand, nor Plaintiff's institution of suit and consequent expenditure of attorneys' fees undermines the validity of the parties' agreed upon appraisal provision or its valid use").

In addition, the Court agrees with Cincinnati that, given Cincinnati's coverage admission, the amount of business loss is the only issue remaining. Weatherizer's argument that the parties' disagreement over the proper expert valuation methodology falls outside the scope of business loss is without merit. As Cincinnati aptly explains in its supplemental brief on the issue, methodology determinations pertain to the value of the business loss, not whether the loss was covered, and, thus, are appropriate topics for appraisal. *See* Cincinnati Supp. Br. (Doc. 51) at 2-3 & Ex. 1 (citing Yuriy's Jewelry v. Federated Mut. Ins. Co., No. GD-18-01438, 2019 Pa. Dist. & Cnty. Dec. LEXIS 7703 at *2 (Pa. C.P. Nov. 19, 2019)). In so ruling, the Court finds the reasoning of the Pennsylvania Common Pleas Court judge in Yuriy's Jewelry persuasive. In Yuriy's Jewelry, the Court held that the appraisal umpire "had the authority to determine which valuation method to use to calculate the amount of loss" and that the umpire "did not exceed his scope of authority by choosing to use the valuation method suggested by [the insurer's] appraiser." 2019 Pa. Dist. & Cnty. Dec. LEXIS 7703 at *4 (noting that the insurer's appraiser was a forensic accountant and valued the loss based on forensic accounting principles). The

4

Yuriy's Jewelry court also found it important to note that, as here, the appraisal provision at issue did not restrict the appraiser's methodology, did not prohibit calculating business loss based on forensic accounting principles and did not require the umpire to accept the loss as reported by the insured. Id. at *3-*5 (adding that "[t]he Umpire was free to make all factual and legal decisions that were necessary to determine the dollar amount of [the loss] . . . . It was necessary for the Umpire to consider the scope of the loss to resolve the value of the loss"); *see also* Shearer, 2017 WL 3611743, at *3 ("Plaintiffs' position regarding the proper valuation method is immaterial to whether [the insurer] may seek an appraisal under the Policy."); Williamson v. Chubb Indem. Ins. Co., No. 11-CV-6476, 2012 WL 760838, at *4 (E.D. Pa. Mar. 8, 2012) ("[T]o say such disputes are sufficient to negate the appraisal provision in the policy would effectively eliminate appraisal as a workable method of alternative dispute resolution.").

### B. Cincinnati's Motion for Summary Judgment (Doc. 52)

Cincinnati also has moved for summary judgment (Doc. 52), arguing that it is entitled judgment as a matter of law on all remaining claims because, in light of the appraisal demand, no genuine factual issues remain for determination by the finder of fact. Cincinnati also urges that the undisputed facts demonstrate that Cincinnati made a reasonable claim valuation decision following a thorough investigation and in reasonable reliance on its expert accountant. *See* Cincinnati Br. Supp. (Doc. 53) at 11.

Cincinnati's Motion for Summary Judgment is denied as premature. Although its arguments are well-taken, the Court finds that they are better addressed after completion of the

appraisal process, when the Court can more confidently determine the nature and scope of any remaining disputes.[1]

### C. <u>**Weatherizer's Motion for Summary Judgment (Doc. 55)**</u>

Weatherizer moves for summary judgment on its breach of contract claims under a quasi-estoppel theory. Specifically, Weatherizer argues that Cincinnati is estopped from "making any change," in the business income coverage calculation that is not in line with the method described in Jessica Shearer's March 17, 2022 email. *See* Weatherizer Br. Supp. (Doc. 56) at 4-14 & 50 Exs. 2-3. The Court declines to so find at this stage of the proceedings, prior to appraisal.

As Cincinnati notes in its response brief, Pennsylvania courts are cautious to apply estoppel principles in the insurance context. *See* Br. Opp. (Doc. 65) at 2-3 (citing cases). Cincinnati also has pointed to numerous other weaknesses and potential material factual disputes clouding Weatherizer's quasi-estoppel theory. *See* <u>id.</u> at 3-6. Moreover, as set forth above, the appraisal process provides a contractual mechanism for resolving disputes over the amount of business income loss. Given these considerations, as well as the public policy considerations favoring appraisal, the Court declines to put the cart before the horse and usurp the role of the appraisers. Indeed, should the appraisal agree with Weatherizer's calculation of business loss, many of these arguments may be rendered moot. Conversely, should Cincinnati's methodology prevail, Weatherizer would be hard-pressed to justify retaining a windfall. Accordingly, Weatherizer's request for summary judgment on a quasi-estoppel theory is denied as premature.

---

[1] Defendant's Motion for Summary Judgment as it pertains to Weatherizer's breach of contract claims also arguably falls outside the scope of the Court's Order limiting the topics for summary judgment motions to (1) the preclusive effect of Defendant's initial communications to Plaintiff regarding business income loss calculations and (2) bad faith. *See* Doc. 48.

Should any equitable issues regarding damages remain following appraisal, Weatherizer may renew its motion at that time, keeping in mind the Court's skepticism regarding the merits of its position and being prepared to sharpen its arguments accordingly.

Weatherizer also moves for summary judgment on its bad faith claims on three grounds: (1) that Cincinnati acted in bad faith when it "inexplicably changed" calculation methods for Plaintiff's business income loss; (2) that Cincinnati acted in bad faith by filing a counterclaim for unjust enrichment in this litigation; and (3) Cincinnati acted in bad faith by demanding appraisal "late in the litigation." *See* Docs. 55, 56 at 14-24. Cincinnati opposes each of these arguments. *See* Br. Opp. (Doc. 65) at 6-12.

As to the final ground—the timing of Cincinnati's appraisal demand – Weatherizer's Motion is summarily denied. As set forth above, Cincinnati's appraisal demand was neither untimely nor unreasonable. Therefore, it cannot provide the foundation for a bad faith claim. Weatherizer's motion for summary judgment as to the bad-faith claims is denied as premature in all other respects. Weatherizer may renew its motion, if appropriate, following the appraisal process.

## II.  ORDER

**AND NOW, IT IS ORDERED THAT** Defendant Cincinnati Insurance Company's Motion to Compel Appraisal (**Doc. 35**) is **GRANTED**. Plaintiff, Weatherizer, Inc., shall appoint a competent and impartial appraiser pursuant to the applicable appraisal provision in Policy number ENP 0167868, and both parties shall proceed with an appraisal of the amount of loss under the Policy's loss of business income and extended business income coverages. All proceedings in this action are **STAYED** until further notice, and this case shall be administratively closed. The parties shall complete the appraisal process within forty-five (45)

days and file a joint report on the docket upon completion thereof. This deadline will be extended only for good cause shown.

**IT IS FURTHER ORDERED THAT** Weatherizer, Inc.'s Motion for Summary Judgment (**Doc. 55**) is **DENIED** to the extent it argues that Cincinnati Insurance Company's appraisal demand constituted bad faith. Weatherizer, Inc.'s Motion is **DENIED WITHOUT PREJUDICE** as premature in all other respects. Cincinnati Insurance Company's Motion for Summary Judgment (**Doc. 52**) is **DENIED WITHOUT PREJUDICE** as premature.

IT IS SO ORDERED.

March 31, 2025                                             s/Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record